# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

CHRISTINE ALYCE SLAYMAN,

        Petitioner,

v.                                        Case No.:  3:20-cv-434-TJC-PDB
                                          3:18-cr-44-TJC-PDB

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

Petitioner Christine Alyce Slayman, through counsel, moves under 28 U.S.C. § 2255 to vacate her convictions and sentence for two counts of producing child pornography. (Civ. Doc. 1, § 2255 Motion; <u>see also</u> Civ. Doc. 1-1, Memorandum.)[1] She pleaded guilty to both offenses in 2018 and was sentenced to 480 months' imprisonment. Petitioner challenges her convictions and sentence based on the alleged ineffective assistance of counsel. The United States responded in opposition. (Civ. Doc. 5, Response.)  Petitioner did not reply, although she was granted leave to do so. (<u>See</u> Civ. Doc. 4, Briefing Order.) Thus, the case is now ripe for review.

---

[1]     "Civ. Doc. #" refers to docket entries in the § 2255 case, No. 3:20-cv-434-TJC-PDB. "Crim. Doc. #" refers to docket entries in the criminal case, No. 3:18-cr-44-TJC-PDB. Unless otherwise noted, page numbers refer to the number designated by CM/ECF.

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is unnecessary to decide the matter. No evidentiary hearing is required because Petitioner's allegations are affirmatively contradicted by the record, patently frivolous, or would not entitle her to relief even if the facts she alleges are assumed to be true. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015).

## I.    Background

On February 25, 2018, the Jacksonville Sheriff's Office ("JSO") received a tip from a concerned informant about a USB thumb drive in Petitioner's residence, which reportedly contained video files of Petitioner engaged in sexual acts with her prepubescent son, C.A. (Crim. Doc. 39, Presentence Investigation Report [PSR] ¶ 16.)[2] The informant, who babysat for C.A., recognized Petitioner and C.A. as the individuals depicted in the videos. (Id.) The informant created a copy of the video files, returned the thumb drive to where she found it, and gave a copy of the files to JSO. (Id.)

JSO officers executed a search warrant the next day. (Id. ¶ 17.) While executing the warrant, officers located a 16 gigabyte USB thumb drive in Petitioner's bathroom vanity, where the informant advised she had found and returned the thumb drive. Id. The Department of Homeland Security

---

[2]    Petitioner did not object to the facts in the PSR. (See Crim. Doc. 41, Sentencing Memorandum; Crim. Doc. 64, Sentencing Transcript Vol. I at 6.)

forensically examined the thumb drive and found that it contained eighteen videos depicting Petitioner engaged in sexual acts with C.A., who was six years old when the recordings were made. (Id. ¶ 18.) The videos depicted Petitioner and C.A. nude while Petitioner directed C.A. to use sex toys on her. (Id. ¶ 19; see also Crim. Doc. 33, Plea Agreement at 22–23.) In some videos, Petitioner held the recording device herself, and in others the recording device was placed in a stationary position. (PSR ¶ 18.) The files' metadata reflected that the videos were produced near King William, Virginia (where Petitioner and her son used to live) using an Apple iPhone 6. (Id.)

During later interviews with law enforcement, Petitioner admitted that she produced the videos with C.A. at her residence in King William, Virginia, when they lived there in 2015. (Id. ¶ 20.) Petitioner said that her then-boyfriend, Kevin Hight, asked her to produce the videos, and that she sent him copies of the videos from her iPhone for his consumption. (Id.) Petitioner stated that she deleted the videos from her phone about a month after creating them and later got a new iPhone. (Id.) According to Petitioner, Hight copied the files onto the thumb drive, and the last time she had seen the thumb drive in her Jacksonville, Florida apartment was in March or April 2017. (Id.)

Petitioner was arrested on February 28, 2018, and shortly afterward, a federal grand jury indicted her on one count of possession of child pornography. (Crim. Doc. 9, Indictment.) Assisted by privately retained counsel, Dale Carson,

Petitioner pleaded not guilty to the charge. (Crim. Doc. 12, Minute Entry of Arraignment.) A United States Magistrate Judge ordered that Petitioner be detained pending trial (Crim. Doc. 15), and later determined that Petitioner was competent to stand trial (Crim. Doc. 24, Order Finding Petitioner Competent; Crim. Doc. 23, Stipulation Regarding Competency).

On August 29, 2018, the United States filed a superseding information charging Petitioner with two counts of producing child pornography. (Crim. Doc. 28, Superseding Information.) The next day, Petitioner executed a waiver of indictment in open court (Crim. Doc. 31) and pleaded guilty to both charges under a written plea agreement (see generally Crim. Doc. 33, Plea Agreement; Crim. Doc. 63, Plea Transcript). The Magistrate Judge who presided over the plea colloquy recommended:

> After cautioning her and examining her under oath concerning each Rule 11 matter, I found that her pleas were intelligently, knowingly, and voluntarily made, and that the facts that she admitted establish the elements of the charged offenses. I therefore recommend that the Court accept her pleas and adjudicate her guilty of counts one and two of the superseding information.

(Crim. Doc. 35, Report and Recommendation Concerning Guilty Pleas at 1.) Without objection, the Court accepted Petitioner's guilty pleas and adjudicated her guilty of the two counts in the Superseding Information. (Crim. Doc. 37.)

According to a Presentence Investigation Report, Petitioner's advisory sentencing guidelines range was life imprisonment, based on a total offense level of 46 (which maxed out at 43 under U.S.S.G. § 5A) and a Criminal History

4

Category of I. (PSR ¶¶ 50–53, 57, 94.) Because the total statutory maximum sentence was 60 years (720 months) in prison, that became her guidelines range. (Id. ¶ 94.) Neither party objected to the PSR or the guidelines calculation, which the Court adopted. (Crim. Doc. 64, Sentencing Transcript Vol. I at 6; Crim. Doc. 65, Sentencing Transcript Vol. II at 3–4.)

Petitioner, through counsel, urged the Court to impose the mandatory minimum sentence of 15 years' imprisonment, concurrent for both counts. (See Crim. Doc. 41, Sentencing Memorandum; Crim. Doc. 64 at 92–102.) Petitioner argued that her conduct stemmed from her relationship with Hight, who allegedly pressured her to create the videos involving C.A. and then used existing videos to blackmail her into creating more. (Crim. Doc. 41 at 1–2; Crim. Doc. 64 at 103–10 (Petitioner's statement in allocution).) Defense counsel pointed to Petitioner's history of depression and low self-esteem, her prompt cooperation with law enforcement, her acceptance of responsibility, and her remorse as mitigating factors. (See generally Crim. Doc. 41.) At sentencing, Petitioner also presented statements and testimony from three witnesses: her mother, Kathleen Slayman (Crim. Doc. 64 at 41–56); her aunt, Kimberly Mills (id. at 57–65); and a psychologist who evaluated her, Dr. Harry Krop (id. at 66–90). The witnesses described the collapse of Petitioner's relationship with her father at a young age as a traumatic event that may have propelled her to seek the attention and approval of men. That event purportedly explained why she

created the videos, which were allegedly part of an effort to please Hight. Petitioner's mother and aunt also stated that, except for the criminal conduct and Petitioner's relationship with Hight, she was a loving mother who provided for C.A.

The government urged the Court to impose the guideline sentence of 60 years in prison, citing the egregious facts of the crime. (Id. at 6–37.) The government countered Petitioner's argument that Hight compelled her to create the videos involving C.A., pointing out that Hight lived several states away, and Petitioner had known him for only about a month, when she started creating the videos. (Id. at 10, 27.) The government also introduced other evidence to counter Petitioner's attempt to pin the blame on Hight. The government introduced text messages sent by Petitioner to a man named "Josh," in which she referenced committing incest with her son, suggested that she derived pleasure from it, and suggested that she hoped to commit incest with C.A. as he grew older. (See id. at 34–36, 37 (discussing Government's Sealed Exhibit 8).) And, the government argued, the videos showed that Petitioner directed C.A.'s activities, she seemed to enjoy herself, and the videos showed no signs of her being coerced. (Id. at 10–13.) The government also pointed out that the thumb drive containing the videos was found in Petitioner's bathroom vanity, near her makeup, six months after Hight had moved out of the apartment. (Id. at 25–26; see also Gov't Sentencing Exs. 4, 5.)

The Court ultimately sentenced Petitioner to a term of 480 months' imprisonment, consisting of 300 months as to Count One and a consecutive term of 180 months as to Count Two. (Crim. Doc. 65 at 19; Crim. Doc. 46, Judgment.) Describing the case as "one of the more disturbing cases" it had seen in over 20 years, the Court cited the nature and circumstances of the offense, as well as the need to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and protect the public, as justifying a lengthy prison term. (Crim. Doc. 65 at 4–19.) The Court rejected Petitioner's argument that Hight pressured her to make the illicit videos, noting that Hight lived hundreds of miles away when she started creating them. (Id. at 8–10.) The Court also observed that Petitioner sent text messages reflecting that she derived pleasure from sexually abusing C.A., she repeatedly chose to violate C.A. by creating eighteen videos, and that "ultimately there's insufficient evidence of coercion, either physical or emotional, to shift responsibility from Ms. Slayman's criminal acts." (Id. at 9–10.) But the Court noted that Petitioner lacked any criminal history, was affected by domestic issues as a child (which may have included sexual abuse), had a longstanding history of depression, had tried to provide a good home for her son, and pleaded guilty. (Id. at 10–11, 12, 14.) Thus, the Court imposed a term of imprisonment that was 20 years below the guidelines sentence of 60 years in prison. The United States objected to the sentence, but Petitioner did not. (Id. at 23.)

7

Petitioner filed a notice of appeal. Her appellate attorney moved to withdraw and filed a brief under <u>Anders v. California</u>, 386 U.S. 738 (1967). After an independent examination of the record, the Eleventh Circuit found "no arguable issues of merit" and affirmed Petitioner's convictions and sentences. <u>United States v. Slayman</u>, 788 F. App'x 708, 708 (11th Cir. 2019).

Petitioner did not seek certiorari review from the Supreme Court. These § 2255 proceedings timely followed.

## II.   Discussion

Under 28 U.S.C. § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 authorizes a district court to grant relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. <u>United States v. Addonizio</u>, 442 U.S. 178, 184-86 (1979); <u>Spencer v. United States</u>, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc).

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." <u>Rivers v. United States</u>, 777 F.3d 1306, 1316 (11th Cir. 2015); <u>see also</u> <u>Beeman v. United States</u>, 871 F.3d 1215, 1221–23 (11th Cir. 2017). If "the

evidence does not clearly explain what happened … the party with the burden loses." Beeman, 871 F.3d at 1225 (internal quotation marks and citation omitted). A § 2255 movant will not be entitled to relief, or an evidentiary hearing, "when [her] claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

"[A] collateral attack is the preferred vehicle for an ineffective-assistance claim." United States v. Padgett, 917 F.3d 1312, 1318 (11th Cir. 2019). To establish ineffective assistance of counsel, a § 2255 petitioner must show both: (1) that her counsel's performance was constitutionally deficient, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether counsel was deficient, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). "In the light of the 'strong presumption' that counsel's actions [fell] within the wide range of constitutionally adequate assistance, a movant 'must establish that no competent counsel would have taken the [challenged] action.'" Khan v. United States, 928 F.3d 1264, 1272 (11th Cir. 2019) (quoting Chandler v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000) (en banc)). To establish prejudice, the petitioner must show a reasonable likelihood that the

result of the proceeding would have been different but for counsel's error. <u>Martin</u>, 949 F.3d at 667 (citing <u>Padilla v. Kentucky</u>, 559 U.S. 356, 366 (2010)). The Court considers the totality of the evidence in determining whether a petitioner has established deficient performance and prejudice. <u>Strickland</u>, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697.

### A. First Ground: Counsel's advice to sit for a pre-plea interview

Before she pleaded guilty, Petitioner gave an interview to law enforcement in which she admitted she had produced pornographic videos with C.A. at her residence in King William, Virginia, in 2015. (<u>See</u> PSR ¶ 20.) Investigators already knew this because they had examined the video files and metadata on the thumb drive that was retrieved from her residence. (<u>See</u> <u>id.</u> ¶¶ 18–19.) Petitioner also told investigators that she made the videos at the request of her ex-boyfriend, Kevin Hight, and that Hight copied the files onto the thumb drive. (<u>Id.</u> ¶ 20.)

Petitioner alleges that her attorney gave ineffective assistance because he advised her to give the interview without first securing some type of agreement to ensure she benefited from her cooperation. (<u>See</u> Civ. Doc. 1 at 5; Civ. Doc. 1-1 at 8–10.) According to Petitioner,

> Counsel set up the proffer with the government and advised [Petitioner] to be honest to reduce the severity of her charges. Based on counsel's erroneous advice, [Petitioner] believed she would receive a 5K1.1 reduction for her cooperation with [the] government at the proffer. What trial counsel had failed to do beforehand was negotiate any sort of preliminary agreement with the government to that extent. Instead, [Petitioner] was left with an admission on record only to be told later that a 5K1.1 reduction was unavailable to her, regardless of her cooperation with the government. Trial counsel grossly mischaracterized the proceeding. The government, for its part, denied that the meeting in which [Petitioner] provided further information about her own case and others, including Hight, was never [sic] intended as a proffer.

(Id. at 9 (internal citations omitted); see also Civ. Doc. 1-8, Petitioner's Affidavit, p. 2.)[3] Petitioner says she was left without "any benefit or protection due to counsel's failure to negotiate a reciprocal agreement with the government for what only he had incorrectly deemed a 'proffer.'" (Civ. Doc. 1-1 at 10.) Petitioner alleges that she was prejudiced "because but for counsel's poor advice to offer information to the government without any sort of reciprocal benefit or collateral agreement, [Petitioner] would never have cooperated with the government to the extent she did, forcing her to make a plea." (Id.) Thus, Petitioner claims she would not have pleaded guilty but for counsel's advice to give the interview.

### 1. Effect on Petitioner's guilty pleas

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162

---

[3]    Citations to Petitioner's Affidavit refer to the page number in the lower righthand corner.

(2012). So, "[d]uring plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Id. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Strickland's two-part framework "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 57 (1985). First, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 57 (internal quotation marks and citation omitted). Second, in the context of a guilty plea, a petitioner "can show prejudice only if 'there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial.'" Winthrop-Redin v. United States, 767 F.3d 1210, 1219 (11th Cir. 2014) (quoting Hill, 474 U.S. at 59). The Supreme Court warns that "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how [s]he would have pleaded but for [her] attorney's deficiencies." Lee v. United States, 137 S. Ct. 1958, 1967 (2017). Instead, judges should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id.; see also Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991) ("[A]fter the fact testimony concerning [a defendant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction" a defendant would have accepted or rejected a plea).

To the extent Petitioner alleges that counsel was ineffective for not securing a cooperation agreement before she interviewed with law enforcement,

that by itself would not necessarily establish deficient performance. <u>United States v. Pina</u>, No. 1:17-cr-08, 2017 WL 3667661, at *3 (W.D. Mich. Aug. 23, 2017) (rejecting claim that defense attorney was ineffective for advising defendant to make a statement to police without a proffer agreement). But Petitioner also alleges that "counsel grossly mischaracterized the [pre-plea interview]" and led her to "believe[ ] she would receive a 5K1.1 reduction for her cooperation with [the] government at the proffer," even though counsel had secured no such promise from the government. (Civ. Doc. 1-1 at 9.) If counsel misinformed Petitioner about the nature of the pre-plea interview or promised that she would receive a substantial assistance reduction for her cooperation, such advice would "f[a]ll below an objective standard of reasonableness." <u>Hill</u>, 474 U.S. at 57 (quoting <u>Strickland</u>, 466 U.S. at 687–88). But even if counsel performed deficiently, Petitioner must show "a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." <u>Id.</u> at 59.

Petitioner alleges that she was prejudiced "because but for counsel's poor advice to offer information to the government without any sort of reciprocal benefit or collateral agreement, [Petitioner] would never have cooperated with the government to the extent she did, forcing her to make a plea." (Civ. Doc. 1-1 at 10.) But Petitioner does not flesh out this conclusory allegation. She does not explain how or why her cooperation with the government "forc[ed] her to

13

make a plea." As the government observes, "all of the evidence of the offenses of conviction," including the facts supporting her guilty pleas, were "gathered separate[ly] … from any statements by [Petitioner]. Ultimately, [Petitioner] filmed herself committing the crime. No statements by [Petitioner] were necessary to secure a conviction." (Civ. Doc. 5 at 12; <u>see also</u> Crim. Doc. 33 at 22–23 (factual basis)). Petitioner's affidavit, while leveling several complaints against counsel (some of which are not tied to any claim in the § 2255 Motion), also fails to address how counsel's advice about the proffer "forc[ed]" her to plead guilty. (<u>See</u> Civ. Doc. 1-8.) And Petitioner does not point to any "contemporaneous evidence to substantiate" her <u>post hoc</u> assertion that she would not have pleaded guilty but for counsel's advice to give the pre-plea interview. <u>Lee</u>, 137 S. Ct. at 1967. Petitioner's conclusory allegation that counsel's advice to cooperate forced her to plead guilty is not enough to warrant relief from her guilty plea. See <u>Tejada</u>, 941 F.2d at 1559.[4]

The record also refutes Petitioner's allegation that counsel's advice to cooperate forced her into a guilty plea. When Petitioner pleaded guilty, she already knew she had given an unconditional pre-plea interview and that she

---

[4]     Petitioner's conclusory claim of prejudice is especially problematic because she alleges that, if not for counsel's advice, she would not have cooperated with the government "<u>to the extent she did</u>." That implies she would have cooperated with the government anyway, only to a lesser extent. But Petitioner does not describe the difference between how much cooperation she did offer and how much cooperation she would have offered no matter her attorney's advice. As a result, Petitioner makes it impossible to measure the effect of counsel's advice on the extent of her cooperation, and thus on her decision to plead guilty.

was not guaranteed a substantial assistance reduction for her cooperation. At the change-of-plea hearing, Petitioner stated under oath that she had read and understood every part of the Plea Agreement, including the cooperation provision (Crim. Doc. 63 at 7, 33–34, 36), that she pleaded guilty knowingly, voluntarily, and free of any form of coercion, (id. at 42–44), and that she was satisfied with her attorney, with whom she had discussed the case (id. at 43–44). The Plea Agreement included a section on cooperation, under which the government promised to consider—within its sole discretion—whether Petitioner's cooperation qualified as substantial assistance to warrant a motion for a downward departure or a below-mandatory minimum sentence under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. (Crim. Doc. 33 at 7–8.) Petitioner affirmed that she understood this provision, including the government's total discretion to decide whether to file a substantial assistance motion. (Crim. Doc. 63 at 29–30, 36.) And she affirmed nobody had promised her anything outside the Plea Agreement. (Id. at 42–43; see also Crim. Doc. 33 at 18–19.) All the same, Petitioner reaffirmed it was her desire to plead guilty. (Crim. Doc. 63 at 44–46.) Petitioner voiced no complaint about the voluntariness of her plea, counsel's advice to sit for the pre-plea interview, or the Plea Agreement's cooperation provision.

When "a defendant makes statements under oath at a plea colloquy," as Petitioner did, she "bears a heavy burden to show [her] statements were false."

United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). That is because "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon [her] guilty plea." Blackledge v. Allison, 431 U.S. 63, 71 (1977). Thus, "[s]olemn declarations in open court carry a strong presumption of verity," id. at 74, and "the representations of the defendant, [her] lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," id. at 73–74. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74; see Winthrop-Redin, 767 F.3d at 1216–20. Petitioner's conclusory and factually unsupported allegation that she was forced to plead guilty because of counsel's advice to sit for the pre-plea interview is not enough to overcome her sworn statements at the change-of-plea colloquy.[5]

---

[5]     While a defendant usually "will not be heard to refute [her] testimony given under oath when pleading guilty," "where the defendant offers specific factual allegations supported by the affidavit of a reliable third person, [s]he is entitled to a hearing on [her] allegations." United States v. Sanderson, 595 F.2d 1021, 1021 (5th Cir. 1979) (internal citations and footnote omitted); see also Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting decisions of the former Fifth Circuit issued before the close of business on September 30, 1981, as binding in the Eleventh Circuit). That is not the case here. Petitioner tenders only her own conclusory and self-serving allegations and affidavit to counter her directly inconsistent former testimony. This is not enough to overcome the strong presumption that her sworn statements at the plea colloquy were true. See Winthrop-Redin, 767 F.3d at 1217.

Beyond the change-of-plea colloquy itself, the sentencing record also sheds light on why Petitioner pleaded guilty, contradicting her current allegations. At sentencing, the prosecutor said "[w]e could have chosen to proceed with charging her [with] 18 counts, each of which carried … a 30-year statutory maximum," but instead "[w]e chose to charge her with two. And she was fully informed that I would be requesting a 60-year term of imprisonment, which is running each of those consecutive." (Crim. Doc. 64 at 36.) Petitioner's counsel then said:

> We are here today in large measure because the potential penalty of going to trial is so significant were it not for a reasonable prosecutor, someone who understands the dynamic—and, believe me, 60 years is a long time to spend in custody.
>
> I will tell you that we couldn't go to trial. The Government has the ability, as you full well know, to show the actual videotape of the molestation of the child to the jury. I don't know in any other circumstance where the court would allow, in a narcotics trial, the opportunity for the jurors to actually sample the narcotics to see whether or not it was really real.
>
> I mean, child pornography is criminal. The possession, the showing of it is criminal. Yet here we're in the position where we have to take a plea. So the courts can never address this. By taking a plea, as you full well know, we can't appeal anything, we're just stuck where we are.

(Id. at 95.) Counsel later clarified that he did not mean Petitioner was "forced" to plead guilty in some way. (Id. at 111.) Petitioner was present for all these remarks and never contradicted them. The prosecutor's and defense counsel's unrebutted comments suggest that Petitioner's decision to plead guilty followed from (1) the risk that the government could bring up to eighteen charges against

her if the case went to trial, (2) the opportunity for Petitioner to avoid the sentencing exposure of additional charges, and (3) the potency of the government's evidence, which included the ability to show a jury the videos in which Petitioner recorded herself sexually abusing her six-year-old son.

Thus, the record refutes Petitioner's allegation that counsel's advice to sit for the pre-plea interview "force[d]" her into a guilty plea. Petitioner fails to show a reasonable probability that, but for counsel's advice to give the pre-plea interview, she would not have pleaded guilty and would have gone to trial. <u>Hill</u>, 474 U.S. at 59. Relief on this claim will be denied.

### 2. *Effect on Petitioner's sentence*

Petitioner alleges that her attorney deviated from standard practice and performed deficiently by advising her to sit for a pre-plea interview without first securing a "reciprocal agreement" that would have ensured Petitioner benefited from her cooperation. (Civ. Doc. 1-1 at 8–9.) Petitioner says that after she interviewed with the government, she was "bereft of any benefit or protection due to counsel's failure to negotiate a reciprocal agreement with the government for what only he had incorrectly deemed a 'proffer.'" (<u>Id.</u> at 10.) Later, Petitioner learned "that a 5K1.1 reduction was unavailable to her, regardless of her cooperation with the government." (<u>Id.</u> at 9.) The Court construes these allegations as asserting that Petitioner would have obtained a lower sentence or a substantial assistance reduction if not for counsel's failure to negotiate a

"reciprocal agreement" before Petitioner cooperated.

It is neither unheard of nor inherently deficient for an attorney to advise a defendant to cooperate with law enforcement without securing a "reciprocal agreement" beforehand. See, e.g., Pina, 2017 WL 3667661, at *3. And even if counsel deviated from standard practice by advising Petitioner to cooperate without a preliminary agreement, that would not, by itself, show that counsel's performance fell outside the wide range of professionally reasonable assistance. See Chandler v. United States, 218 F.3d 1305, 1317 (11th Cir. 2000) (en banc) ("No absolute rules dictate what is reasonable performance for lawyers." (citing Strickland, 466 U.S. at 688)). If Petitioner did not intend to go to trial (which defense counsel's remarks at sentencing suggest was the case (see Crim. Doc. 64 at 95)), a reasonable attorney could have advised Petitioner to interview with the government before negotiating a plea deal or cooperation agreement. Counsel could have reasonably believed that (1) providing early and timely information was Petitioner's best chance to earn a motion for a substantial assistance reduction, (2) the government might offer a more favorable plea agreement if Petitioner provided early and timely information first, and (3) at the least, cooperating with the government early on would weigh in Petitioner's favor when the Court considered the § 3553(a) factors at sentencing. See Chandler, 218 F.3d at 1315 (because "[t]he reasonableness of a counsel's performance is an objective inquiry," an ineffective assistance claim fails if a

court can conceive of reasonable strategic motives for counsel's actions (citing Darden v. Wainwright, 477 U.S. 168, 186 (1986); United States v. Fortson, 194 F.3d 730, 736 (6th Cir. 1999))). Although Petitioner did not earn a substantial assistance reduction, "the fact that a particular [strategy] ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." Id. at 1314.

In any event, Petitioner fails to establish prejudice. Even if counsel should have tried to secure a "reciprocal agreement" before Petitioner gave the interview, Petitioner does not allege facts showing a reasonable probability that her ultimate sentence would have been lower. See Strickland, 466 U.S. at 694. Petitioner points to nothing showing that her attorney could have secured a more favorable cooperation agreement than the one she obtained under her Plea Agreement. Nor does Petitioner point to anything supporting a conclusion that, even if counsel had secured a cooperation agreement before the interview, the government would have considered the information she gave worthy of a substantial assistance reduction. Because speculative and unsupported generalizations are not enough to warrant habeas relief, relief on this claim will be denied. See Tejada, 941 F.2d at 1559

## B. Second Ground: Counsel's promise of a 15-year sentence

Petitioner alleges that her attorney gave ineffective assistance by promising her she would receive a guaranteed sentence if she pleaded guilty. (Civ. Doc. 1-1 at 10–12.) According to Petitioner, "counsel insisted that

[Petitioner] would not receive a greater sentence than fifteen years if she entered a plea. In fact, counsel guaranteed [Petitioner] that if she pled, her maximum sentence would be fifteen years." (Id. at 11 (internal citations omitted); see also Civ. Doc. 1-8, pp. 1, 2.) Petitioner alleges that she "had discussed her defenses with counsel and was prepared to argue battered woman syndrome, low self-esteem, and mental instability at trial." (Civ. Doc. 1-1 at 12.) "However, counsel's insistence that trial would result in a higher sentence than the guaranteed fifteen-year sentence she would receive if she pleaded guilty led [Petitioner] to believe entering a plea to forgo trial was her best option." (Id.) Thus, Petitioner asserts that but for counsel's erroneous advice, she "would have insisted on trial." (Id.)

The record contradicts these allegations. The Plea Agreement warned Petitioner she could be sentenced to up to 60 years in prison and contained no promise that she would receive a particular sentence. (Crim. Doc. 33 at 3.) The agreement included a merger clause that stated, "This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea." (Id. at 18–19.) Petitioner initialed each page and signed the Plea Agreement, which was also signed by Petitioner's attorney and two Assistant United States Attorneys. (Id. at 19.)

Then, during the change-of-plea colloquy, Petitioner denied under oath that anybody (including her attorney) had promised her a specific sentence in exchange for her guilty plea:

| THE COURT: | Are you pleading guilty because you are guilty? |
|---|---|
| [PETITIONER]: | Yes. |

***

| THE COURT: | Has anyone made a promise or assurance to you of any kind to get you to plead guilty, other than what's in your plea agreement? |
|---|---|
| [PETITIONER]: | No. |
| THE COURT: | Are you relying on any agreement, discussion, promise, or understanding with anyone concerning what sentence will be imposed if you plead guilty, other than what's in your plea agreement? |
| [PETITIONER]: | No. |
| THE COURT: | At this time, do you understand that you can't know the exact sentence you'll receive? |
| [PETITIONER]: | Yes. |
| THE COURT: | Has anyone promised that you'll receive a light sentence or otherwise be rewarded for pleading guilty other than what's in your plea agreement? |
| [PETITIONER]: | No. |

(Crim. Doc. 63 at 42–43.) The prosecutor and defense counsel similarly assured the Court that no promises had been given to Petitioner in exchange for her guilty pleas, outside the promises in the Plea Agreement. (Id. at 43.) And Petitioner affirmed she had told the truth at the hearing. (Id. at 44.)

Petitioner also understood that the Court could impose a sentence up to the statutory maximum, and that she would remain bound by her guilty plea even if her sentence turned out to be harsher than expected:

> THE COURT: .... The district judge is bound not by the guidelines range, but by the statutory range. He can impose a sentence that is more severe or less severe than what the guidelines recommend. Again, he's only bound by statute, not by guidelines.
>
> Do you understand that?
>
> [PETITIONER]: Yes.
>
> ***
>
> THE COURT: .... You should know the sentence the district judge imposes might be different from any estimated sentence that Mr. Carson or anyone else has given to you. In fact, it could be higher than you expect.
>
> If it's higher than you expect, or for whatever reason, you're still going to be bound by your guilty plea and won't have a right to withdraw your guilty plea.
>
> Do you understand all of this?
>
> [PETITIONER]: Yes.

(Id. at 28–29). And Petitioner knew that if the Court stacked the maximum sentences for each count, she could be sentenced to up to 60 years in prison. (Id. at 18–20, 31.)

Thus, Petitioner's sworn statements at the plea colloquy, and those of her counsel and the prosecutor, squarely contradict her current allegations that counsel promised her a 15-year sentence and that she counted on that promise.

These statements "carry a strong presumption of verity," <u>Blackledge</u>, 431 U.S. at 74, and "constitute a formidable barrier" to collateral relief, <u>id.</u> at 73–74. Petitioner "bears a heavy burden to show [her] statements were false," <u>Rogers</u>, 848 F.2d at 168, and she fails to carry that burden. Petitioner filed no objections to the acceptance of her guilty pleas and raised no objection at sentencing when the Court pronounced the 40-year term of imprisonment. Then, nearly two years after pleading guilty, after all other avenues for relief from her sentence were exhausted, she submits only her own affidavit to counter her directly inconsistent former testimony. And Petitioner's allegations are conclusory. She does not provide details to support her claim, such as when counsel purportedly promised her a 15-year sentence, how or where counsel delivered this promise, or what evidence Petitioner would adduce in support of her claim. "The district court is entitled to discredit a defendant's newly-minted story about being [promised a certain sentence] when that story is supported only by the defendant's conclusory [and self-serving] statements." <u>Winthrop-Redin</u>, 767 F.3d at 1217. Because the record refutes Petitioner's belated and conclusory allegation that she pleaded guilty because counsel promised her a 15-year sentence, relief on this claim will be denied.

### C. Third Ground: Failure to object to PSR

Next, Petitioner alleges that counsel gave ineffective assistance by failing to object to the PSR. (Civ. Doc. 1 at 5.) In her affidavit, she says "there were

plenty of objections made by myself that should have been presented." (Civ. Doc. 1-8, p. 2.) Petitioner identifies two guidelines enhancements she believes counsel should have disputed. First, she argues that counsel should have objected to a two-level enhancement under U.S.S.G. § 2G2.1(b)(3) for the distribution of child pornography. (Id., pp. 2–3; see also PSR ¶ 39.) She believes she should not have received the distribution enhancement because Kevin Hight was never charged with a crime and because she did not "deliver or transfer possession" of child pornography. (Civ. Doc. 1-8, pp. 2–3.) Instead, Hight allegedly placed the thumb drive containing child pornography in a U-Haul when Petitioner, Hight, and her son moved from Virginia to Florida. (See id., p. 3.) Second, Petitioner argues that counsel should have objected to a five-level enhancement under U.S.S.G. § 4B1.5(b)(1) for being a repeat and dangerous sex offender. (Id.; see also PSR ¶ 49.) She contends she was ineligible for this enhancement because "USSG § 5B1.5(b)[6] [sic] states that the pattern of activity requires that the defendant engaged in prohibited conduct on at least two separate occasions AND that at least two minors were victims of the conduct." (Civ. Doc. 1-8, p. 3.)

Petitioner says she asked counsel to object to these enhancements and to present mitigating factors, that she was told counsel would do so, but that

---

[6]      There is no § 5B1.5 in the Sentencing Guidelines. Presumably, Petitioner meant to say § 4B1.5.

counsel failed to make the objections. (<u>Id.</u>, p. 3.) Petitioner says she only learned that counsel had filed no objections to the PSR from speaking with her appellate attorney. (<u>Id.</u>, p. 2.)

The record refutes these allegations. Petitioner was standing next to counsel when, at the opening of the sentencing hearing, counsel announced he had no objections to the PSR or the guidelines calculation. (Crim. Doc. 64 at 6.) When it was her opportunity to speak, Petitioner voiced no objection to the guideline calculation or her counsel's lack of objections to it. (<u>See</u> <u>id.</u> at 103–10.) Rather than litigate the guidelines calculation, Petitioner's attorney focused on presenting mitigating evidence. Counsel presented testimony from two family members and a psychologist, who described Petitioner's struggles with low self-esteem, depression, and a traumatic family history, and how these might have influenced her conduct. (<u>Id.</u> at 41–90.) Counsel's presentation persuaded the Court to impose a sentence 20 years below the guidelines range, for a total of 40 years' imprisonment. The sentence drew an objection from the United States, but not from Petitioner. (Crim. Doc. 65 at 23.)

Petitioner's objections to the distribution and repeat sex offender enhancements are misplaced, and her attorney was not ineffective for not raising them. Under U.S.S.G. § 2G2.1, two offense levels are added "[i]f the defendant knowingly engaged in [the] distribution" of child pornography. U.S.S.G. § 2G2.1(b)(3). "Distribution" "means any act, including possession with

26

intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." Id., § 2G2.1, cmt. 1. For purposes of the enhancement, "the defendant 'knowingly engaged in distribution' if the defendant (A) knowingly committed the distribution, (B) aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution, or (C) conspired to distribute." Id., § 2G2.1, cmt. 3. When Petitioner pleaded guilty, she admitted to producing the pornographic videos of her and her son and admitted that "[a]fter producing these videos, [she] sent them to a man with the initials K.H. by text message." (Crim. Doc. 33 at 23.) Because Petitioner admitted that she transmitted child pornography to another person by text message, her attorney had no reasonable basis to contest the distribution enhancement. See Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

As for the five-level repeat sex offender enhancement, the sentencing guidelines provide:

> **(b)** In any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
> > **(1)** The offense level shall be 5 plus the offense level determined under Chapters Two and Three. However, if the resulting offense level is less than level 22, the offense level shall be level 22, decreased by the number of levels corresponding to any applicable adjustment from § 3E1.1.

> **(2)** The criminal history category shall be the criminal history category determined under Chapter Four, Part A.

U.S.S.G. § 4B1.5(b). Petitioner argues that the enhancement does not apply to her because it requires that someone be "a REPEAT and dangerous sex offender against minor(s) plural" and requires "that at least two minors were victims of the [prohibited] conduct." (Civ. Doc. 1-8, p. 3.) Petitioner is mistaken. The guideline's commentary states:

> **(B) Determination of Pattern of Activity.--**
>
> > **(i) In General.**--For purposes of subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with <u>a minor</u>.
> >
> > **(ii) Occasion of Prohibited Sexual Conduct.**--An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion.

U.S.S.G. § 4B1.5, cmt. 4(B) (emphasis added).

Contrary to Petitioner's assertion, the enhancement does not require the existence of two or more underage victims. Rather, the guideline requires that the defendant engaged "in a pattern of activity involving prohibited sexual conduct"—meaning at least two separate occasions of prohibited sexual conduct with "a minor"—no matter if those occasions occurred during the course of the offense or resulted in a conviction. <u>Id.</u> Petitioner satisfied these criteria. She

admitted to producing two videos on different dates—July 18, 2015, and August 16, 2015—depicting her and C.A. engaged in sexually explicit conduct. (Crim. Doc. 33 at 22–23.) Altogether, Petitioner created eighteen videos of her and C.A. between July 18 and September 21, 2015. (PSR ¶ 18.) Petitioner's conduct was part of a pattern in which she created sexually explicit videos with C.A. and sent them to her boyfriend's cell phone for his consumption. (Id. ¶ 20.) Thus, the enhancement was properly applied, counsel had no basis for objecting to it, and counsel did not perform deficiently by not raising such an objection. Freeman, 536 F.3d at 1233.

Because Petitioner's allegations and the record show she is not entitled to relief as a matter of law, relief on this claim will be denied.

### D. Fourth Ground: Failure to seek dismissal of the Indictment

Finally, Petitioner alleges that her attorney gave ineffective assistance by failing to move to dismiss the Indictment. (Civ. Doc. 1 at 5; Civ. Doc. 1-1 at 12–14.) Petitioner argues that, "In this case, [she] was indicted for the shipping and transportation of illegal matter in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2)." (Civ. Doc. 1-1 at 13.) That was wrong, Petitioner argues, because it was her allegedly abusive ex-boyfriend, Kevin Hight, who "was in sole possession of the matter as his personal item" and was responsible for transporting it across state lines. (Id.) Thus, Petitioner argues that her counsel should have challenged the "veracity of the Indictment" and moved to dismiss it based on

factual inaccuracies. (Id. at 14.)

This claim fails for several reasons. First, the Indictment did not charge Petitioner with "the shipping and transportation" of child pornography. Rather, the Indictment charged her with possessing a matter containing child pornography—i.e., the USB thumb drive—"that had been shipped and transported in and affecting interstate and foreign commerce and had been produced using materials that had been shipped and transported in and affecting interstate and foreign commerce." (Crim. Doc. 9 at 1.) Here, the USB thumb drive that stored child pornography moved from Virginia to Florida. It is irrelevant if Petitioner herself did not transport the thumb drive across state lines; what matters is that it did move across state lines. See United States v. Penton, 380 F. App'x 818, 820 (11th Cir. 2010) ("We have held that the Government can satisfy the interstate-commerce requirement of child pornography statutes by showing that the computer equipment on which the images are stored traveled in interstate commerce, regardless of how the images themselves were originally produced." (citing United States v. Maxwell, 446 F.3d 1210, 1211–12, 1219 (11th Cir. 2006))).

Second, even if the Indictment contained factual inaccuracies in Petitioner's eyes, that is not a basis for seeking dismissal of the Indictment. The Federal Rules of Criminal Procedure contain no provision for dismissing an indictment simply because the defendant contends it is factually inaccurate.

<u>See</u> Fed. R. Crim. P. 12(b). That is the whole purpose of a trial: for a jury to test an indictment's factual accuracy. So, a dispute about the indictment's factual correctness is not a reason to seek its dismissal short of trial.

Third, Petitioner was not convicted under the Indictment anyway. Instead, she waived her right to require a superseding indictment (Crim. Doc. 31) and pleaded guilty to the two counts in the Superseding Information (Crim. Doc. 28). Through her guilty plea she admitted the truth of the charges in the Superseding Information, rendering moot any defect in the earlier Indictment. "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction," including pre-plea claims of ineffective assistance, "and only an attack on the voluntary and knowing nature of the plea can be sustained." <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992) (citation omitted). This "claim of ineffective assistance is not about [Petitioner's] decision to plead guilty" and the record "fully reflect[s] the voluntariness of [her] plea." <u>Id.</u> Plus, an alleged factual error in the indictment is not jurisdictional. <u>See</u> <u>United States v. Brown</u>, 752 F.3d 1344, 1354 (11th Cir. 2014) ("So long as the indictment charges the defendant with violating a valid federal statute as enacted in the United States Code, it alleges an 'offense against the laws of the United States' and, thereby, invokes the district court's subject-matter jurisdiction."). Thus, Petitioner waived this claim by entering a knowing and voluntary guilty plea.

## IV.    Conclusion

Having considered each of Petitioner's claims, and finding that none warrants relief under 28 U.S.C. § 2255, it is **ORDERED:**

1. Petitioner Christine Alyce Slayman's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk will enter judgment for the United States and against Petitioner, and close the file.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability (COA). Because this Court has determined that a COA is not warranted, the Clerk will terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed. Such termination will serve as a denial of the motion.[7]

**DONE AND ORDERED** at Jacksonville, Florida this 7th day of November, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

---

[7]    The Court should issue a COA only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

lc 19
C:
Counsel of record
Christine Alyce Slayman